**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**ANDRES GARCIA URANGA,**

    **Petitioner,**

    v.                                  **CASE NO. 20-3162-JWL**

**WILLIAM BARR, et al.,**

    **Respondents.**

**MEMORANDUM AND ORDER**

    This matter is a petition for writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner is detained at the Chase County Jail in Cottonwood Falls, Kansas, under the authority of the Enforcement and Removal Office ("ERO"), Immigration and Customs Enforcement ("ICE"), a sub-agency of the U.S. Department of Homeland Security ("DHS"). Petitioner raises four grounds for relief: 1) his detention is not authorized by the Immigration and Naturalization Act ("INA") where he has been ordered released on bond by another federal court; 2) the INA does not authorize his continued detention; 3) his detention is unlawful given violation of his right to counsel under the Constitution and the Administrative Procedures Act (APA); and 4) his detention is in violation of his right to due process under the Fifth Amendment. Petitioner seeks an injunction prohibiting Respondents from transferring him out of the District of Kansas; immediate release; a declaration that Respondents violated Petitioner's Fifth Amendment rights; a declaration that any review conducted by Respondents under 8 U.S.C. § 1231 was arbitrary, capricious, and contrary to the evidence; a declaration that Petitioner's continued detention is improper as punitive; and costs and attorney fees. (Doc. 1, at 25-26.)

1

## I. Background

Petitioner is a native and citizen of Mexico. Declaration of Deportation Officer Jay Page, ¶ 8 (Doc. 4–1) (hereinafter "Page Decl."). Petitioner first entered the United States in 1999. (Doc. 1, at 5.) He did so without permission. *Id.* While in the United States, he married and had a child. In 2004, Petitioner returned to Mexico and attempted to reenter the United States, again without permission. He was apprehended during a routine traffic stop and allowed to voluntarily return to Mexico. Page Decl., ¶ 10. Petitioner attempted to obtain lawful permanent residence status in 2006 but was denied in 2009 because of his prior contact with immigration officials and his prior unlawful presence in the United States. (Doc. 1, at 5.) He was apprehended attempting to reenter the United States in January of 2009 and charged in the U.S. District Court for the District of New Mexico with Illegal Entry under 8 U.S.C. 1325(a)(1). Page Decl., ¶ 11. Mr. Garcia pled guilty and was sentenced to time served. (Doc. 1, at 5.) He was removed to Mexico on February 3, 2009, pursuant to an expedited removal order issued by the United States Border Patrol ("USBP") under 8 U.S.C. 1225(b)(1). Page Decl., ¶ 13. He then attempted to return to the United States a month later and was again apprehended by the USBP. Page Decl., ¶ 14. Petitioner was charged in the U.S. District Court for the Western District of Texas with Illegal Re-entry in violation of 8 U.S.C. 1326. He again pled guilty, was sentenced to 120 days, and was removed on July 8, 2009. Page Decl., ¶ 15. After another unsuccessful attempt, he reentered in October of 2009 and has remained in this country ever since with his wife and children, who are U.S. citizens. (Doc. 1, at 6, 11.)

In June of 2016, Mr. Garcia applied for a U Visa based on an attempted robbery which occurred in 2015. Petitioner was the victim and cooperated with law enforcement in the investigation of the crime. Petitioner's application remains pending. (Doc. 1, at 6-7.)

On February 12, 2020, Petitioner was arrested by the Kansas City, Missouri Police

Department on suspicion of drug trafficking.  Page Decl., ¶ 17.  He was not ultimately charged with a crime but was transferred to ICE custody pursuant to a detainer.  (Doc. 1, at 7); Page Decl., ¶ 18.  ICE gave Petitioner a Notice of Intent to Reinstate his prior Order of Removal on February 14, 2020.  (Doc. 1, at 7); Page Decl., ¶ 19.

Petitioner filed a complaint in the U.S. District Court of the District of Columbia on February 21, 2020 challenging the U.S. Citizenship and Immigration Service's delay in adjudicating his U Visa application.  *Andres Uranga Garcia v. USCIS, et al.*, Case No. 1:20-cv-521(ABI).  On February 26, 2020, the judge entered a temporary restraining order preventing Mr. Garcia's removal until further order of that court.  (Doc. 1-1, at 1.)

On May 27, 2020, Petitioner was indicted in the U.S. District Court for the Western District of Missouri on one count of Illegal Re-entry After a Felony Conviction in violation of 8 U.S.C. 1326(a) and (b)(1).  (Doc. 1-3, at 1); Page Decl., ¶ 32.  He was released to the custody of the U.S. Marshal's Service on June 5, 2020, subject to a detainer.  Page Decl., ¶ 33.  U.S. Magistrate Judge Sarah Hayes ordered him released on bond after a detention hearing on June 11, 2020.  Page Decl., ¶ 34.  Petitioner was returned to ICE custody pursuant to the detainer on June 14, 2020 and is being detained at the Chase County Jail in Cottonwood Falls, Kansas.  Page Decl., ¶ 35.

## II. Discussion

To obtain habeas corpus relief, a petitioner must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  The federal district courts have habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal.  *Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Petitioner raises four grounds for relief.  First, he argues that his detention is not authorized by the INA where he has been ordered released on bond by another federal court.   Second, Petitioner argues that, in any event, the INA does not authorize his continued detention.  Third, he claims his detention is unlawful given violation of his right to counsel under the Constitution and the Administrative Procedure Act (APA) at his 90-day post custody order review.  Last, Petitioner asserts that his detention is in violation of due process under the Fifth Amendment.

**A. Legality of Detention under 8 U.S.C. § 1231 after Release under Bail Reform Act**

Petitioner argues the order from the Western District of Missouri releasing him on bond in his prosecution for Illegal Re-entry should effectively trump Respondents' authority to detain him.

The Court recognizes that several district courts have agreed with Petitioner.  *See United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1179 (D. Or. 2012); *see also, e.g., United States v. Rangel*, 318 F. Supp. 3d 1212, 1217–19 (E.D. Wash. 2018); *United States v. Boutin*, 269 F. Supp. 3d 24, 26–29 (E.D.N.Y. 2017); *United States v. Blas*, No. CRIM. 13-0178-WS-C, 2013 WL 5317228, *8 (S.D. Ala. Sept. 20, 2013).  For instance, in *Trujillo-Alvarez*, the defendant was alleged to be a citizen of Mexico with no lawful right to be in the United States, but he had "longstanding ties" in the Portland area, a wife and three minor children who were U.S. citizens, and a history of stable employment.  *Trujillo-Alvarez*, 900 F. Supp. 2d at 1170.  He was charged with illegal reentry.  A U.S. Magistrate Judge determined under the Bail Reform Act ("BRA"), 18 U.S.C. § 3141, et seq., that he did not present a risk of flight or a danger to the community and ordered the defendant released on bond.  *Id.* at 1172.  The government did not appeal that decision, but upon his release, ICE took him into custody under a detainer and transported him to Tacoma, Washington, out of the District of Oregon.  *Id.*  The defendant moved for an order to show cause

why ICE should not be found in contempt.  *Id.*  The court denied the defendant's motion but found that the Executive Branch must choose its priority between criminal prosecution and removal:

> When the Executive Branch decides that it will defer removal and deportation in favor of first proceeding with federal criminal prosecution, then all applicable laws governing such prosecutions must be followed, including the BRA. In such cases, if a judicial officer determines under the BRA that a particular defendant must be released pending trial because that defendant does not present a risk of either flight or harm, and the government has chosen not to appeal that determination, the Executive Branch may no longer keep that person in physical custody. To do so would be a violation of the BRA and the court's order of pretrial release.

*Id.* at 1170.  The court based its decision in part on concerns that the defendant's detention was interfering with his right to counsel in the criminal case.  *Id.* at 1180.  In reaching its conclusion, the court rejected an argument by the Government that the existence of an ICE detainer constitutes a sufficient risk of nonappearance to deny release under the BRA.  *Id.* at 1176.  The court was concerned that the Government was attempting to circumvent the Magistrate's order to release the defendant on bond, stating, "What neither ICE nor any other part of the Executive Branch may do, however, is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA."  *Id.* at 1179.

At the time *Trujillo-Alvarez* was decided, no appellate court had considered the issue.  In the meantime, however, six Circuit Courts have addressed the interplay of the INA and the BRA, and "[n]o court of appeals . . . has concluded that pretrial release precludes pre-removal detention." *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir.), *cert. denied,* 140 S. Ct. 526, 205 L. Ed. 2d 347 (2019).  *See also United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019); *United States v. Pacheco-Poo*, 952 F.3d 950, 952 (8th Cir. 2020); *United States v. Lett*, 944 F.3d 467, 470 (2d Cir. 2019); *United States v. Soriano Nunez*, 928 F.3d 240, 246-47 (3d Cir. 2019); and *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018).  "Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the

5

INA are separate functions that serve separate purposes and are performed by different authorities." *Vasquez-Benitez*, 919 F.3d at 552. "ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the U.S. Marshal cannot detain him under the BRA pending his criminal trial." *Id.* at 553.

Recently, the U.S. District Court for the District of Colorado considered the argument that "once a court determines that the BRA requires a defendant's release and sets the conditions of that release, the Executive Branch cannot attempt an end-run around that decision by taking the defendant into immigration custody" under the authority of the INA. *United States v. Ramirez-Arenas*, No. 19-CR-00035-CMA-1, 2019 WL 2208529, at *4 (D. Colo. May 22, 2019). The court rejected the argument, noting that the Court of Appeals for the Tenth Circuit has not addressed the precise argument, but other circuits have "squarely rejected it." *Id.* The court found those decisions to be "consistent with the Tenth Circuit's implicit statement in *Ailon-Ailon*, 874 F.3d at 1339–40, that criminal proceedings and removal proceedings against a defendant may proceed concurrently." *Id.*, citing *United States v. Ailon-Ailon*, 874 F.3d 1334 (10th Cir. 2017). The court noted that while *Ailon-Ailon* involved different circumstances, the Tenth Circuit explicitly ordered: "When the conditions of release have been met, *the United States Marshals shall release [the defendant] to ICE custody*, pursuant to the detainer." *Id.* (emphasis added). The court determined that the Tenth Circuit's opinion in *Ailon-Ailon* indicates that it "does not perceive the irreconcilable conflict between the BRA and INA described by the defendant, or any conflict whatsoever" and does not find problematic the situation of which the defendant complained. The court found no violation, either Constitutional or statutory, exists when a defendant is granted conditions of release under the BRA but is held under the INA. *See Ramirez-Arenas,* 2019 WL 2208529 at *5.

The undersigned agrees and does not find Respondents' actions in taking custody of Petitioner pursuant to a detainer upon his release by the U.S. Marshals to be a violation of the Constitution or federal law such that Petitioner must be released.

**B. Authorization for Petitioner's Continued Detention**

Petitioner argues that his detention is unlawful under the INA and violates his right to due process under the Fifth Amendment.

8 U.S.C. § 1231(a) provides that the Secretary of Homeland Security shall detain an alien subject to a final order of removal during the 90-day removal period established under 8 U.S.C. § 1231(a)(2). *See Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) and *Morales-Fernandez v. INS*, 418 F.3d 1116, 1123 (10th Cir. 2005). Under § 1231, the removal period begins on the latest of: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed, and the court orders a stay of removal, the date of the court's final order; or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). Generally, the government is required to remove the alien held in its custody within the 90-day removal period. *See* 8 U.S.C. § 1231(a)(1)(A)–(B).

If removal cannot be carried out within the removal period, inadmissible aliens may be detained beyond the removal period under certain circumstances. 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis,* the U.S. Supreme Court held that § 1231(a)(6) implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States and does not permit indefinite detention. *Zadvydas*, 533 U.S. at 701. The detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *Id*. at 701. Beyond that period, if the alien shows that

there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner was subject to an expedited removal order which became final in 2009. He was removed but then illegally reentered the country. In that situation, the Attorney General is authorized by 8 U.S.C. § 1231(a)(5) to reinstate a prior removal order against the illegally reentering alien. *Cordova-Soto v. Holder*, 659 F.3d 1029, 1032 (10th Cir. 2011). 8 U.S.C. § 1231(a)(5) provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after reentry.

8 U.S.C. § 1231(a)(5). The implementing regulation states that an immigration officer must make three determinations in establishing whether the alien is subject to reinstatement: "(1) [w]hether the alien has been subject to a prior order of removal"; "(2) [t]he identity of the alien"; and "(3) [w]hether the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a).

The issue then becomes calculation of the removal period when a removal order is reinstated. While not clear from the statutes and regulations, courts have generally treated the reinstated removal order as a new removal order for purposes of calculation of the removal period under 8 U.S.C. § 1231(a)(1)(B). In other words, "[o]nce the reinstatement determination becomes final, the 90-day period for removal commences." *Morales v. Sessions*, No. CV 17-225-DLB-HAI, 2018 WL 3732670, at *4 (E.D. Ky. Aug. 6, 2018); *see also Rodriguez-Carabantes v. Chertoff*, No. C06-1517Z, 2007 WL 1268500, at *2 (W.D. Wash. May 1, 2007) ("The removal period for reinstated removal orders is triggered by the events listed in INA § 241(a)(1)."); *Vanegas*

*v. Smith*, 179 F. Supp. 2d 1205, 1208 (D. Or. 2001) ("[T]he reinstated order of deportation is administratively final, which triggers the beginning of the 'removal period.'").

Petitioner argues the removal period should be based only on the original 2009 removal order, which became final on January 27, 2009, and thus long ago expired. (Petitioner's Reply, Doc. 5, at 10.) The case Petitioner cites in support, *Diaz-Ortega v. Lund*, differs materially from Mr. Garcia's circumstances. In *Diaz-Ortega*, the petitioner had been subject to a final removal order since 2005. *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, *7 (W.D. La. Oct.15, 2019). She never left the United States, and when she was arrested 12 years later, the Government took the position that the removal period under 1231(a) "restarted" upon her arrest. *Id.* The court determined the 90-day removal period had expired in 2005 and declined to restart it. In doing so, the court noted there was no recurrence of a "triggering event" under 8 U.S.C. § 1231(a)(1)(B). *Id*. at *8. "Absent a later triggering event – which would, by definition, begin "the" removal period – § 1231(a)(1)(B) dictates that the removal period necessarily begins when a removal order becomes final, and necessarily ends 90 days later." *Id.*

Unlike *Diaz-Ortega*, in this case there has been a triggering event under § 1231(a)(1)(B): the expedited removal order was reinstated and became final on February 14, 2020. Petitioner's Reply, Doc. 5, at 5; *see Acevedo-Rojas v. Clark*, No. C14-1323-JLR, 2014 WL 6908540, at *5 (W.D. Wash. Dec. 8, 2014) ("Given the language of § 1231(a)(5) prohibiting reopening and review, the Court concludes that petitioner's reinstated removal order was administratively final at the time it was reinstated."). The reinstated order does not "restart" the clock on the original removal period; rather, it receives a new removal period. Therefore, Mr. Garcia has been detained for approximately 165 days. Petitioner's detention exceeds the 90-day removal period but not the six-month presumptively reasonable period, which will not expire until on or about August 14,

9

2020.  Accordingly, Petitioner is not yet entitled to relief under *Zadvydas*.  *See Shixin Lu v. Adducci*, No. 15-cv-11448, 2015 WL 3948920, *4 (E.D. Mich. June 29, 2015) (finding that where petitioner had not been in custody for six months following her removal order, the court lacked authority to hear petitioner's claims, regardless of the merits of her argument that she is not a flight risk, and that she should be granted asylum or that she should be released pending the resolution of her motion to reopen in front of the BIA).

### C. Lawfulness of Post Order Custody Review

Petitioner argues the 90-day Post Order Custody Review conducted by ICE officials violated his due process rights, and he should be "afforded an opportunity for a meaningful POCR [ ] while represented and by an unbiased and neutral arbitrator." (Doc. 1, at 23.)

8 C.F.R § 241.4 delegates to ICE the authority to detain aliens beyond the initial 90–day removal period.  It establishes standards and procedures ICE must follow to do so. The regulation provides that ICE will periodically review an alien's records and consider whether to continue detention or release the alien.  *See* 8 C.F.R. § 241.4(d), (h), (i), and (k).  ICE must conduct the initial review "prior to the expiration of the removal period," 8 C.F.R. § 241.4(h)(1), (k)(1)(i), or "as soon as possible thereafter," 8 C.F.R. § 241.4(k)(2)(iv).  ICE must "provide written notice to the detainee approximately 30 days in advance of the pending records review so that the alien may submit information in writing in support of his or her release."  8 C.F.R. § 241.4(h)(2).  "[T]he alien may be assisted by a person of his or her choice, subject to reasonable security concerns at the institution and panel's discretion, in preparing or submitting information in response to the district director's notice."  *Id.*  In addition, ICE must "forward by regular mail a copy of any notice or decision that is being served on the alien" to the alien's attorney if he or she is represented.  8 C.F.R. § 241.4(d)(3).

Petitioner was served with a Notice to Alien of File Custody Review on March 18, 2020. The notice informed him the custody review would occur on or about May 14, 2020. Page Decl., ¶ 24. On May 1, 2020, a deportation officer notified Petitioner's attorney via email that he would be interviewing Petitioner in connection with a POCR determination. *Id.* at ¶ 17. The interview occurred on that same date. *Id.* at ¶ 18. Based on recommendation of the interviewing officer, the Deputy Field Office Director determined Petitioner should remain detained pending removal. (Doc. 1-4, at 1.) Petitioner was served with a letter informing him of ERO's decision on May 6, 2020. (Doc. 1-4, at 3, 4.) Petitioner's attorney was also mailed a copy of the decision letter on the same date and was notified via email that the letter was being sent. *Id.* at 4.

The provisions of 8 C.F.R. § 241.4 "reflect the concerns of the *Zadvydas* Court and provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements." *Bonitto v. Bureau of Immigration and Customs Enforcement*, 547 F. Supp. 2d 747, 757–58 (S.D. Tex. 2008). The procedures in § 241.4, therefore, are not meant merely to "facilitate internal agency housekeeping, but rather afford important and imperative procedural safeguards to detainees." *Id.*

It appears to the Court that the procedures of § 241.4 were substantially followed, and Petitioner does not argue otherwise. Instead, Petitioner is arguing for *more* process than the regulations provide by claiming his attorney should have been present at the POCR review. In support of his argument, Petitioner cites several cases. However, as Respondents point out, the cases cited involve hearings before an immigration judge or the Board of Immigration Appeals. *See Biwot v. Gonzales*, 403 F.3d 1094 (9th Cir. 2005) (pro se alien was denied right to have counsel present at his removal hearing before an immigration judge); *Dakane v. United States*, 399 F.3d 1269, 1273 (11th Cir. 2005) (aliens have the privilege of having counsel at their removal hearings

before an immigration judge); *Borges v. Gonzales*, 402 F.3d 398, 401 (3rd Cir. 2005) (alien facing removal proceeding in immigration court has a statutory right to counsel under 8 U.S.C. § 1362 and a constitutional right to counsel based on Fifth Amendment's guarantee of due process of law); *Rosales v. ICE*, 426 F.3d 733, 737(5th Cir. 2005) (considering whether alien has due process right to have immigration judge inform him of his right to contact consulate at deportation hearing); *Brown v. Ashcroft*, 360 F.3d 346, 350 (2d Cir. 2004) (considering whether alien's due process rights were violated in removal proceedings). It is settled that the Due Process Clause of the Fifth Amendment guarantees to aliens the right to counsel at their own expense for immigration hearings. *See, e.g., Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) ("Although there is no *Sixth Amendment* right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the *Fifth Amendment* guarantee of due process that adhere to individuals that are subject to removal hearings.") (emphasis added); *Colindres–Aguilar v. INS*, 819 F.2d 259, 261 n.1 (9th Cir. 1987) ("Petitioner's right to counsel ... is a right protected by the fifth amendment due process requirement of a full and fair hearing."). The right is codified at 8 U.S.C. § 1362:

> In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

8 U.S.C.A. § 1362. *See also* 8 U.S.C. § 1229a(b)(4)(A). However, the Court has found no case holding a removable alien is entitled to have an attorney present at a POCR and finds no basis for reaching that conclusion here.

Petitioner also argues that the Administrative Procedure Act ("APA") provides him with a right to have his attorney present at the POCR. He points to 5 U.S.C. § 555(b), which states: "A

person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel . . ..”

The APA has been applied to some aspects of immigration proceedings but only where the INA is silent. *See, e.g.*, *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955) (holding that the INA does not supersede the APA's right to judicial review because there is no language in the INA which "expressly supersedes or modifies" § 10 of the APA). Where the INA lays out "a specialized" and "very particularized" procedure, such as for deportation proceedings, the APA does not apply. *See Marcello v. Bonds*, 349 U.S. 302, 308-09 (1955). If the INA does not provide the procedure, the APA default provisions still apply. *Doe v. McAleenan*, 415 F. Supp. 3d 971, 977–79 (S.D. Cal. 2019), *modified,* No. 19CV2119 DMS AGS, 2019 WL 6605882 (S.D. Cal. Dec. 3, 2019); *Doe v. Wolf*, 432 F. Supp. 3d 1200 (S.D. Cal. 2020). In *Doe v. Wolf*, the court considered whether asylum seekers from Mexico have a right to have access to their retained counsel prior to and during their non-refoulement interviews under the Migrant Protection Protocols Program ("MPP"). The MPP, instituted by the Department of Homeland Security in January of 2019 based on a provision of the INA (8 U.S.C. § 1225(b)(2)(C)), provides that asylum seekers arriving at the border from Mexico are returned to Mexico to await the outcome of their immigration proceedings. *Wolf*, 432 F. Supp. 3d at 1205. However, in implementing the MPP, the Government must account for the principle of non-refoulement. *Id.* This principle, derived from the 1951 Convention Relating to the Status of Refugees and the Convention Against Torture, prohibits the return of an individual to a county where he or she would more likely than not be persecuted or tortured. *Id.* Under the MPP, if asylum seekers express a fear of returning to Mexico, they are provided a non-refoulement interview. *Id.* This interview is not mentioned in the INA, and no statute or regulation addresses procedures for the interview. *Id.* at 1209.

The court found that because the INA contains no provision concerning non-refoulement interviews, the APA is not superseded and the petitioners have a right to access retained counsel prior to and during the interviews under 5 U.S.C. § 555(b). *Id.* at 1212. In reaching this conclusion, the court rejected an argument that if § 555(b) applies to non-refoulement interviews, it must also apply to expedited removal proceedings. *Id.* at 1208-09. The court reasoned that the two proceedings are not comparable because the "INA provision concerning expedited removal proceedings is complex, specialized, and specific to expedited removal proceedings" while the "INA contains no provision concerning non-refoulement interviews." *Id.* at 1209. The fact that the 8 U.S.C. § 1225 does not mention whether aliens have a right to counsel in expedited removal proceedings does not mean it does not supersede the APA. *Id.*

Here, the INA's implementing regulations provide for POCRs and outline the POCR procedures. *See* 8 C.F.R. § 241.4. Section 241.4(h)(2) provides that the alien may be assisted by a person of his choice "in preparing or submitting information" for the review. This provision specifically defines the parameters of an alien's right to the assistance of counsel in a POCR. Consequently, 5 U.S.C. § 555(b) is superseded and is not applicable.

As for Petitioner's claim that procedural due process requires that the POCR be conducted by an unbiased and neutral arbitrator, Petitioner has not demonstrated that he is entitled to habeas relief on that ground,, and the Court has found no support for it. *See Ali v. Lynch*, No. 1:16-CV-1182, 2017 WL 1535116, at *3 (S.D. Ohio Apr. 27, 2017), *report and recommendation adopted,* No. 1:16CV1182, 2017 WL 2191047 (S.D. Ohio May 17, 2017) (rejecting claim that alien is entitled to "neutral decision-maker" at POCR); *Atugah v. Dedvukaj*, No. 2:16cv68, 2016 WL 3189976, at *4 (W.D. Mich. May 10, 2016)), *report and recommendation adopted*, 2016 WL 3166600 (W.D. Mich. June 7, 2016) (rejecting claim that lack of neutral decision maker to review

continued detention violated alien's due process rights, pointing out that alien could bring habeas petition); *Moses v. Lynch,* No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) (holding that in the absence of "some indication ... that ICE failed to comply with any specific requirements" of custody-review procedures established in the Code of Federal Regulations, petitioner had not demonstrated a violation of his Fifth Amendment right to procedural due process); *Mareya v. Mukasey*, No. 06-cv-4525 RHK/RLE, 2007 WL 4373012, at *10-13 (D. Minn. Dec. 12, 2007) (finding that when immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required).

### III. Conclusion

Petitioner has not shown that his post-removal detention is unlawful or unconstitutional. Petitioner has failed to show that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States" at this time. 28 U.S.C. § 2241(c)(3).

**IT IS THEREFORE ORDERED BY THE COURT** that the petition is **denied.**

**IT IS SO ORDERED**.

**Dated July 27, 2020, in Kansas City, Kansas.**

        S/ John W. Lungstrum
        **JOHN W. LUNGSTRUM**
        **UNITED STATES DISTRICT JUDGE**